**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jason MEADOWS, Omar E. Alvarez, Jairo Alonso Mejia–Montoya, Jose Vidal, Defendants–Appellants.**

**No. 87–3125.**

United States Court of Appeals, Eleventh Circuit.

March 15, 1988.

---

Michael Zelman, Miami, Fla., Charles S. Williams, Pensacola, Fla., for Meadows.

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, Fla., for Alvarez and Vidal.

Joel Fanning, Pensacola, Fla., for Mejia–Montoya.

Barbara Schwartz, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before HILL, Circuit Judge, HENDERSON [*], Senior Circuit Judge, and MURPHY [**], District Judge.

HILL, Circuit Judge:

Appellants were charged with conspiracy to possess marijuana with intent to distribute and possession of more than 1,000 kilograms of marijuana while on board a vessel subject to the jurisdiction of the United States on the high seas. They were tried in the United States District Court for the Southern District of Florida, and a jury returned a verdict of guilty on both counts as to all four defendants. The defendants appeal, raising several contentions of error in the trial and sentencing. We have carefully reviewed each of the stated contentions and find them to be without merit. We therefore affirm the judgment of the district court.

We find it necessary to discuss only the appellants' claim that the stopping and boarding of their ship was improper. Their vessel, the DIANA, was spotted in a high risk area of the Caribbean.[1] The DIANA was approximately 50 feet in length, and it was sitting low in the water indicating that it was carrying a heavy cargo. The ship's crew failed to respond initially to radio and whistle signals from the Coast Guard Cutter GALLATIN. When the DIANA'S captain finally responded, he claimed that their purpose was fishing, contrary to the conspicuous lack of any fishing gear on board. Coast Guard officials also noticed apparently fresh damage to the DIANA of the kind found when two ships meet on the high seas and bump, as frequently occurs when marijuana is off-loaded from a mother ship onto smaller ships for importation. Given knowledge of these facts, along with experience in the field of Caribbean drug importation, we conclude that the Coast Guard

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. While presence in a suspect area would not, in and of itself, justify a search, the location of the vessel was certainly a legitimate and important factor for the Coast Guard to consider. When a small vessel is found in an area where the typical traffic is involved in either fishing or drug-related activity, and that vessel lacks the usual earmarks of fishing activity, the Coast Guard may certainly be suspicious.

had probable cause to board the vessel to investigate criminal activity.[2]

AFFIRMED.

---

2. The Coast Guard's log indicates that the stop was not for the purpose of a document or safety inspection. We note, however, that the Coast Guard's authority to conduct safety and document inspections under 14 U.S.C. § 89(a) is plenary, and that such an inspection, consistent with the Fourth Amendment, need not be based upon *any* suspicion of criminal activity. *See United States v. Luis–Gonzalez*, 719 F.2d 1539, 1549 (11th Cir.1983). Indeed, the authority to board and conduct such an inspection is so absolute that it can scarcely be argued that one has a reasonable expectation of privacy in the common areas of a ship that would be plainly visible during such an inspection. In this case, the officers had not gone beyond that area when it became abundantly clear that the vessel was loaded with contraband.