**UNITED STATES of America, Appellee,**

v.

**Roberto PIEDRAHITA–SANTIAGO, Defendant, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Anibal PELAEZ–ESCOBAR, Defendant, Appellant.**

**Nos. 90–1355, 90–1356.**

United States Court of Appeals, First Circuit.

Heard March 4, 1991.

Decided April 23, 1991.

Luis A. Medina–Torres by appointment of the Court, Hato Rey, P.R., for defendant-appellant Roberto Piedrahita–Santiago.

Yolanda A. Collazo–Rodríguez, by appointment of the Court, Los Angeles, Cal., for defendant-appellant Aníbal Peláez–Escobar.

Warren Vázquez, Asst. U.S. Atty., Guaynabo, P.R., with whom Daniel F. López–Romo, was on brief, Hato Rey, P.R., for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and BOYLE,[*] District Judge.

TORRUELLA, Circuit Judge.

Appellants Piedrahita–Santiago and Peláez–Escobar were discovered by United States Coast Guard authorities on the high seas about 45 miles southwest of Cabo Rojo, Puerto Rico. Their vessel, the "MELPO, JR.," was flagless, in poor condition, and riding low in the water. Such suspicious circumstances warranted an investigation. A search of the vessel disclosed 131 bales of marijuana. Subsequently appellants were tried and convicted under 46 U.S.C.App. § 1903 for aiding and abetting in the possession of, with intent to distribute, a controlled substance on board a stateless vessel. Appellants moved for Rule 29 dismissal based on an alleged lack of subject matter jurisdiction plus insufficient evidence. Fed.R.Crim.P. § 29(c). Their motion was denied, and sentences were imposed. For purposes of sentencing, Piedrahita–Santiago was characterized as a leader, and his base offense level was increased by four. Both appellants challenge the district court's disposition of their Rule 29 motion. Piedrahita–Santiago

[*] Of the District of Rhode Island, sitting by designation.

additionally appeals his sentence. We find no reason to disturb the district court's rulings, and thus we affirm.

## JURISDICTION

■ The statute under which appellants were charged and convicted states:

It is unlawful for any person on board a vessel of the United States, or on board a vessel *subject to the jurisdiction of the United States* ... to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

46 U.S.C.App. § 1903 (emphasis added). Jurisdiction was asserted over appellants because they were allegedly on board a stateless vessel. Vessels without nationality are deemed subject to the jurisdiction of the United States. *Id.* at § 1903(c)(1)(A). Section 1903(c)(2) defines "stateless" as including:

(A) a vessel aboard which the master or person in charge makes a claim of registry, which claim is denied by the flag nation whose registry is claimed; and

(B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel.

*Id.* at § 1903(c)(2)(A)–(B). A claim of nationality may be made in one of three ways:

(A) possession on board the vessel and production of documents evidencing the vessel's nationality in accordance with article 5 of the 1958 Convention on the High Seas;

(B) [flying the ensign or flag of the vessel's flag nation]; or

(C) a verbal claim of nationality or registry by the master or person in charge of the vessel.

*Id.* at § 1903(c)(3)(A)–(C).

■ When Coast Guard authorities approached the MELPO, JR., Piedrahita–San-

tiago took control of the situation. When Coast Guard officer Lt. Mark Ogle inquired as to the nationality of the vessel, Piedrahita–Santiago responded that he was not sure, but he believed it to be Arubian.[1] Appellants contend that Piedrahita–Santiago's statement constituted a claim of nationality sufficient to preclude the exercise of United States jurisdiction. We do not agree.

■ Under 46 U.S.C.App. § 1903, jurisdiction constitutes a factual as well as legal element of the crime. The question is, therefore, appropriate for the jury. *United States v. Potes*, 880 F.2d 1475, 1478 n. 1 (1st Cir.1989). Provided the jury has applied the correct legal standard, this court will not overturn its determination unless, given the evidence taken in the light most favorable to the government, reasonable jurors could not have reached that conclusion. *United States v. Cuevas–Esquivel*, 905 F.2d 510, 513 (1st Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 208, 112 L.Ed.2d 169 (1990).

Stateless vessel cases within the First Circuit involving claims of nationality or registry can be grouped into one of three categories: (1) cases involving unequivocal claims of nationality or registry, *United States v. Maynard*, 888 F.2d 918, 924 (1st Cir.1989); *Potes*, 880 F.2d at 1478–79; (2) cases involving no claim of nationality or registry, *United States v. Victoria*, 876 F.2d 1009, 1010 (1st Cir.1989); and (3) cases involving ambiguous claims of nationality or registry. *United States v. Passos–Paternina*, 918 F.2d 979, 983 (1st Cir.1990) (a vessel spokesperson originally claimed Colombian registry; however, Panamanian registry was later claimed by the vessel's master); *Cuevas–Esquivel*, 905 F.2d at 514 (an initial proclamation identified the vessel as the "PECHE, PECHE, Barranquilla;" however, after Coast Guard officials came

---

1. We take judicial notice of the fact that there is no independent Arubian nationality with respect to seagoing vessels. *See* United Nations Convention on Conditions for Registration of Ships, Feb. 7, 1986, *reprinted in, Benedict on Admiralty*, Doc. 14–35 (M. Cohen ed. 7th ed.

1990); A vessel registered in Aruba has Dutch nationality and flies the flag of the Netherlands. *See* Artikel III, Curacaosch Zeebrievenbesluit 1933 ("Curacao Shipregister Resolution of 1933"), P.B.1933.

on board, knowledge of any nationality was denied). The first category clearly falls within the purview of Section 1903(c)(3), while the second category clearly falls without. As a result, there exists very little leeway for the jury in such cases. The situation before us, however, is more akin to the third category, which provides greater flexibility for the jury. Based upon surrounding factual circumstances, the jury may either choose to believe that a claim of nationality was intended, or the jury may find statements insufficient to amount to such a claim. *See, e.g., Cuevas–Esquivel*, 905 F.2d at 513–14.

Nothing in this case other than Piedrahita–Santiago's ambivalent statement evidenced any link with Aruba. The remainder of the evidence pointed to Colombia as the vessel's true nationality. First, all crewmembers were admittedly Colombian nationals. Second, a Colombian flag was found secreted under one of the vessel's bunks. Third, a recent Colombian newspaper was found on board, along with a nautical chart showing a track line leading from Barranquilla, Colombia. In light of these facts, it was entirely reasonable for the jury to find that Piedrahita–Santiago's statement did not amount to a claim of nationality and that the vessel was indeed stateless. Thus we see no reason to disturb that finding on appeal.

## SUFFICIENCY OF THE EVIDENCE

■ In order to establish the elements of the offense charged, the government needed to prove beyond a reasonable doubt: (1) that the vessel was without nationality; (2) that the substance found was in fact marijuana; (3) that the defendants knowingly or intentionally possessed the substance; and (4) that possession was with intent to distribute. 46 U.S.C.App. § 1903. Appellants challenge the sufficiency of the evidence based upon an alleged deficiency in the first and third elements. We disposed of the first element in the prior section of this opinion. We now address the third element.

Appellants maintain that they were merely crewmembers on board the MEL-

PO, JR., and that they believed the cargo was coffee. In support of these asseverations, they point to the fact that the marijuana was well hidden below deck. In addition, they note that Piedrahita–Santiago cooperated fully with the Coast Guard to the extent that he granted permission for Coast Guard authorities to board and search the vessel.

On appeal, this court "assess[es] the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant[s] guilty beyond a reasonable doubt." *United States v. Batista–Polanco*, 927 F.2d 14, 17 (1st Cir. 1991). The evidence "may be entirely circumstantial." *Batista–Polanco*, 927 F.2d at 17. It is the province of the jury, not this court, to determine credibility of the witnesses. *Cuevas–Esquivel*, 905 F.2d at 514. "We defer, within reason, to inferences formulated by the jury in the light of its collective understanding of human behavior in the circumstances revealed by the evidence." *Passos–Paternina*, 918 F.2d at 985. Juries " 'are [not] required to divorce themselves of common sense,' where ... the appellant[s'] portrayal of [themselves] as [ ] innocent bystander[s] is 'inherently unbelievable.' " *Cuevas–Esquivel*, 905 F.2d at 515 (quoting *United States v. Smith*, 680 F.2d 255, 260 (1st Cir.1982), *cert. denied*, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983)). "The factfinder may decide among reasonable interpretations of the evidence." *Batista–Polanco*, 927 F.2d at 17.

The evidence in this case was largely circumstantial. It was nevertheless overwhelming. First, the MELPO, JR., was a relatively small vessel—40 ft.—which would ordinarily require a crew of only three or four. In this case, however, seven crewmembers were found on board. A larger crew than ordinarily needed for navigation purposes suggests that the crew was hired for the purpose of loading and unloading cargo rather than merely steering the vessel. *See, e.g., Victoria*, 876 F.2d at 1011 (larger crew than needed for ordi-

nary fishing); *United States v. Robinson,* 843 F.2d 1, 9 (1st Cir.) (court inferred purpose of large crew was to load and unload cargo), *cert. denied,* 488 U.S. 834, 109 S.Ct. 93, 102 L.Ed.2d 69 (1988); *Potes,* 880 F.2d at 1478 (larger crew than necessary for shrimping).

Second, the vessel was carrying a large quantity of marijuana—131 bales totalling approximately 9,984 lbs.—which, although concealed, was not disguised or inaccessible.[2] *See, e.g., United States v. Jiménez-Pérez,* 869 F.2d 9, 10 (1st Cir.1989) (marijuana was "stowed in an unlocked, easily accessible hold"); *United States v. Beltrán,* 761 F.2d 1, 7 (1st Cir.1985) (crew members had keys to hold where marijuana was stored). This court has held that a relatively small vessel carrying a large quantity of drugs is indicative of knowledge and involvement on the part of the crew. *Victoria,* 876 F.2d at 1011 (a 67 ft. vessel carrying 17,000 lbs. of marijuana). "It is entirely reasonable for [a] jury to conclude that [co-defendants], engaged in conduct which by its nature is kept secret from outsiders, would not allow the presence of innocent bystanders." *Cuevas-Esquivel,* 905 F.2d at 515 (defendant on board a vessel carrying 1,000 kilograms of marijuana claimed to be an innocent bystander; the court found that claim unbelievable).

Third, the vessel was in poor condition and riding very low in the water. A vessel in an extreme state of disrepair may be suggestive of an illicit purpose. *United States v. Guerrero-Guerrero,* 776 F.2d 1071, 1075 (1st Cir.1985) (shabby quarters, inadequate lifeboats, rusted winches and booms, and broken engines indicated that the vessel was "not intended to carry regular cargo and that anyone that crewed aboard it did not have any intention of participating in a regular cargo venture"), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). A vessel riding low in the water may arouse suspicion that the vessel is laden with an illegal cargo. *See Potes,* 880 F.2d at 1477; *Jiménez-Pérez,*

869 F.2d at 10; *United States v. Meadows,* 839 F.2d 1489, 1490 (11th Cir.1989); *United States v. Souder,* 782 F.2d 1534, 1536 (11th Cir.1986).

Fourth, the vessel refused to respond to radio contact and began maneuvering evasively when approached by the Coast Guard. Failure to respond to Coast Guard radio calls, coupled with evasive maneuvering, implies knowledge of wrongdoing. *Beltrán,* 761 F.2d at 7; *United States v. Cruz-Valdez,* 773 F.2d 1541, 1547 (11th Cir.1985), *cert. denied,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986).

Fifth, the vessel openly displayed no symbol of nationality or sign of registry; however, a Colombian flag was concealed under one of the vessel's bunks. When questioned by Coast Guard authorities, Piedrahita-Santiago, speaking for the crew, stated that he believed the vessel was Arubian. He claimed that the vessel's captain had earlier disembarked with the MELPO, JR.'s, registration papers, leaving the crew to fend for themselves until his return later that evening, a statement which, when coupled with the fact that the vessel was 45 miles from the nearest shore, is inherently unbelievable. Piedrahita-Santiago further claimed that the vessel's last port of call was Aruba, while also asserting that its destination was Aruba, despite the fact that a navigational chart located on board indicated a track line leading from Barranquilla, Colombia. As this evidence was highly suspect, the jury need not have believed appellants' statements. *See, e.g., Passos-Paternina,* 918 F.2d at 985 (jurors need not accept a defendant's portrayal of the evidence when it is inherently unbelievable); *Robinson,* 843 F.2d at 9.

All of this evidence, when taken together, was clearly sufficient for the jury to have found appellants guilty beyond a reasonable doubt. *See, e.g., Guerrero-Guerrero,* 776 F.2d at 1075. The jury verdict in this case therefore should not be disturbed.

---

**2.** Two storage areas were implicated, a front hatch and the forward hold. The front hatch was covered by a tarpaulin and secured by a padlock on one side; however, the opposite side was only secured by a metal hoop and nail. The forward hold was also tarpaulin-covered but was not secured.

## SENTENCING

Piedrahita–Santiago was characterized as a "leader" of the marijuana operation for sentencing purposes. His base offense level was increased by four points as a result. *See* United States Sentencing Commission, *Guidelines Manual*, § 3B1.1(a) (Nov.1990) [hereinafter U.S.S.G.]. His final contention on appeal is that the characterization, and hence the four point increase, was erroneous. He maintains that he was merely a crew member and that he assumed the role of spokesperson with the Coast Guard simply because he was the only person on board the MELPO, JR., who spoke English. We do not agree.

■ For sentencing purposes the government only needs to prove its factual assertions by a preponderance of the evidence. *United States v. Wright*, 873 F.2d 437, 441 (1st Cir.1989). This court gives "due regard to the opportunity of the district court to judge the credibility of the witnesses, and [accepts] the findings of fact of the district court unless they are clearly erroneous and [gives] due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

■ The proper inquiry under the sentencing guidelines is whether the defendant acted as either a leader *or* an organizer. U.S.S.G. § 3B1.1(a). The defendant need not have acted as both. While we agree with appellant that the government failed to prove that he acted as an "organizer,"[3] we do not agree that it failed to prove, by a preponderance of the evidence, that he acted as a "leader." Factors appropriate for the court's consideration were appellant's exercise of decision-making authority and the nature of appellant's participation in the offense. *Id.* at comment. (n. 3). To that end, the government presented evidence demonstrating that Piedrahita–Santiago did more than simply answer the Coast Guard's questions. It showed that he also authorized the Coast Guard to board the vessel and granted permission for the

---

**3.** The evidence did not demonstrate that appellant organized the voyage, recruited crewmembers, imparted instructions to the other crew-

Coast Guard to search the vessel. In addition, after being taken into custody, three of appellant's five co-defendants identified him as captain of the vessel. Thus there was sufficient evidence for the district court to conclude, within its discretion, that appellant was a leader. Clear error was not committed below.

## CONCLUSION

For the reasons stated in part one above, we conclude that the district court properly exercised jurisdiction over the indictment. Upon review of the facts, we further conclude that the convictions and sentences of both appellants should be affirmed.

*Affirmed.*

members, or obtained a larger share of the proceeds. U.S.S.G. § 3B1.1 at comment. (n. 3).