960 F.2d 143
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES OF AMERICA, Appellee,
v.
Ivette Abdul-Rahim BARANDICA, Defendant, Appellant.
 No. 91-1511.
 United States Court of Appeals,
First Circuit.
 April 14, 1992
 
 Earl L. Hanson and Hanson & Egers on brief for appellant.
 Daniel F. Lpez-Romo, United States Attorney, and Jose A. Quiles, Assistant United States Attorney, on brief for appellee.
 Before Torruella, Circuit Judge, Coffin and Campbell, Senior Circuit Judges.
 TORRUELLA, Circuit Judge.
 
 
 1
 On February 15, 1991, a jury found appellant Ivette Abdul-Rahim Barandica guilty of (1) possession with intent to distribute approximately five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1); (2) importing the cocaine from Venezuela in violation of 21 U.S.C. § 952(a); and (3) failing to declare her possession of the cocaine on the general declaration of a vessel in violation of 21 U.S.C. § 955.
 
 
 2
 On this appeal, appellant claims that her conviction should be reversed because the evidence was insufficient to establish her knowledge of the cocaine and the district court erred when it allowed the cocaine to be admitted into evidence without establishing the requisite showing of chain of custody. Finding no merit in appellant's claims of error, we affirm.
 
 
 3
 * On November 26, 1990, appellant boarded the CARLA COSTA cruise ship in San Juan, Puerto Rico, for a tour of the Caribbean, including visits to Venezuela, Curacao, Saint Thomas and Saint Martin. Appellant returned to San Juan aboard the cruise ship on December 1, 1990. She was scheduled to fly back to Miami that same day at 11:00 a.m.
 
 
 4
 U.S. Customs Inspector Rosa Perez testified that she had surveyed the passenger list of the CARLA COSTA and determined that appellant fit the profile for inspection since she was travelling by herself and was a citizen of Colombia. As appellant approached the inspection line at an Old San Juan pier, Inspector Perez noted that she appeared nervous. Since appellant was only carrying handbags, Inspector Perez asked her if she had all of her luggage. Appellant replied affirmatively. At this point, Inspector Perez accompanied appellant to another area for a secondary inspection.
 
 
 5
 Inspector Perez asked appellant to put her handbags on top of a table. Appellant placed her bags on the table, except for a straw bag, which she left on the floor. Inspector Perez requested appellant to put the straw bag on the table; appellant responded by handing the inspector a receipt. When appellant finally placed the straw bag on the table, she insisted on retrieving the contents of the bag herself. However, Inspector Perez noticed four picture frames and she retrieved one of them, which she found to be excessively heavy. The picture frame was then field-tested and it reacted positive for cocaine.[1]
 
 
 6
 At trial, appellant testified that she arrived in Miami on July 14, 1990, and stayed for four months at her sister-in-law's house while seeking employment alternatives for her husband, who was in Colombia. Appellant stated that she met a man named Huber Virgin in Miami, who gave her a job for approximately three months. At the end of this period, Virgin owed her approximately $3,000 for her work. Virgin asked appellant to accept as partial payment the cruise on the ship and appellant accepted.
 
 
 7
 Virgin also told appellant that he had a friend in Puerto Rico who had purchased some pictures in Venezuela, but the friend could not transport these pictures as they were "too delicate." Virgin asked appellant to pick up the pictures in Venezuela and return them to Puerto Rico. Appellant asserted that Virgin was supposed to pay her the balance owed her upon her return to Puerto Rico with the picture frames.
 
 II
 A. Sufficiency of the Evidence
 
 8
 Appellant argues that the evidence presented at trial was insufficient to sustain her conviction. In appellant's view, since the cocaine was sealed inside the picture frames, there is no evidence that appellant knew of the contents of the picture frames.
 
 
 9
 In assessing whether the evidence was sufficient for conviction, we examine:
 
 
 10
 the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 
 11
 United States v. Piedrahita-Santiago, 931 F.2d 127, 130 (1st Cir. 1991) (citing United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. 1991)). A conviction can be based entirely on circumstantial evidence. United States v. Hurley, Nos. 90-1690 & 90-1693, slip op. at 10 (1st Cir. Feb. 14, 1992); United States v. Maraj, 947 F.2d 520, 523 (1st Cir. 1991). "As long as the record as a whole supports the conclusion of guilt beyond a reasonable doubt, the jury is free to choose among reasonable constructions of evidence." United States v. Laboy, 909 F.2d 581 (1st Cir. 1990) (citations omitted); see also United States v. Arango-Echeberry, 927 F.2d 35, 38 (1st Cir. 1991) ("[T]he jury is free to choose among reasonable constructions of the evidence and is entitled to resolve issues of credibility for or against any such reasonable constructions").
 
 
 12
 The evidence at trial showed that appellant was carrying the picture frames loaded with cocaine inside a straw bag upon her arrival at the pier in San Juan. Appellant was extremely nervous during the initial interview and inspection of the passengers. Upon being taken to the secondary inspection area, appellant was reluctant to allow Customs Inspector Perez to search the contents of the straw bag; Inspector Perez had to ask appellant to put the straw bag on the table twice. When appellant finally placed the straw bag on the table, she insisted on conducting the search herself.
 
 
 13
 Furthermore, appellant's testimony was contradictory and somewhat unbelievable. Appellant testified that Virgin, who did not have $3,000 to pay for her salary, had instead paid for her roundtrip flight to Miami, her roundtrip flight to Puerto Rico and her "vacation" on a cruise ship. A reasonable jury was entitled to conclude that this makes no sense. Maraj, 947 F.2d at 523 n.3 ("[I]f the jury disbelieved [defendant], it could legitimately have presumed that his fabrication of an exonerative tale was, itself, some proof of [defendant's] guilt"); Piedrahita-Santiago, 931 F.2d at 131 (jury need not believe testimony that is "highly suspect").
 
 
 14
 Additionally, appellant testified that Virgin asked her to hand deliver the picture frames because they were fragile. Yet the frames were made of heavy aluminum and not delicate handicrafts. In sum, as the government forcefully argues, the evidence here, taken as a whole, shows that it was reasonable for the jury to infer that appellant knew that cocaine was concealed in the picture frames.
 
 B. The Admission of the Cocaine
 
 15
 Appellant contends that the district court abused its discretion in allowing the cocaine to be admitted into evidence without establishing the requisite showing of chain of custody as dictated by Rule 901(a) of the Federal Rules of Evidence.[2] The cocaine evidence was initially handled by Inspector Perez, who gave it to Special Agent Rafael Pagn. Special Agent Pagn in turn gave the cocaine to a chemist of the Customs Service. Special Agent Pagn, however, was not available to testify since he was on active duty in Operation Desert Storm at the time of trial.
 
 
 16
 We review the admission of the evidence under an abuse of discretion standard. United States v. Abreu, 952 F.2d 1458, 1467 (1st Cir. 1992); United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.), cert. denied, 112 S. Ct. 164 (1991). When evidence, such as cocaine, is not readily identifiable or is susceptible to alteration, the proponent of the evidence must establish a chain of custody to render it improbable that the original item has been exchanged, tampered with or contaminated. Abreu, 952 F.2d at 1467 (citing E. Cleary, McCormick on Evidence § 212, at 668 (3d ed. 1984)). Any deficiencies in the chain of custody are factored into the weight of the evidence, not its admissibility. Id.; Harrington, 923 F.2d at 1374 ("The possibility of a break in the chain of custody goes only to the weight of the evidence").
 
 
 17
 Appellant's essential contention is that if one of the persons formerly in custody of the evidence is not available to testify at trial to establish the chain of custody, the evidence is automatically excludable since it is not properly authenticated under Rule 901(a). We reject such a mechanical interpretation of Rule 901(a); it would unnecessarily impose a sometimes insurmountable burden on the prosecution to produce at trial all persons who had custody of the evidence, even in cases where the authenticity of the evidence was not at issue. Harrington, 923 F.2d at 1374; United States v. Cardenas, 864 F.2d 1528, 1532 (10th Cir.), cert. denied, 491 U.S. 909 (1989). It is also a particularly weak argument to marshall in this case since Special Agent Pagn's unavailability at trial was hardly inexcusable.
 
 
 18
 We conclude that the district court did not abuse its discretion in allowing the cocaine to be admitted. The person from whom Special Agent Pagn received the evidence, Customs Inspector Perez, as well as the person to whom he delivered it, the chemist, properly identified the evidence. Inspector Perez and the chemist testified at trial that they recognized the cocaine and the picture frames because this evidence bore their initials. The trial testimony of these two witnesses provided sufficient grounds to permit a reasonable jury to conclude that the cocaine seized was the same cocaine admitted into evidence and that the prosecution established the evidentiary chain of custody.
 
 
 19
 Affirmed.
 
 
 
 [1]
 A United States Customs chemist examined the picture frames and found cocaine compacted inside a plastic bag in aluminum foil packages concealed in both sides of each frame. The net weight of the cocaine was 4.2 kilograms and the purity was 95%
 
 
 [2]
 Rule 901(a) provides:
 The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.