**Michael A. LAU, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. No. 90–2590(PG).**

United States District Court,
D. Puerto Rico.

Nov. 22, 1991.

---

Michael A. Lau, pro se.

Antonio R. Bazán, Asst. U.S. Atty., Hato Rey, P.R., for respondent.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Now before the Court is a magistrate's report and recommendation concerning petitioner's motion under 28 U.S.C. § 2255, as well as petitioner's opposition thereto.

The grounds adduced by petitioner, Michael A. Lau, to set aside his sentence were analyzed by the U.S. Magistrate, who found that petitioner's conclusion and legally incorrect arguments did not meet his burden to prove that his claim is meritorious. The Court will dismiss Michael A. Lau's section 2255. petition but not for the reasons stated in the magistrate's report and recommendation.

Petitioner principally alleges ineffectiveness of his counsel in his failure to litigate competently a Fourth Amendment claim.

Lau's claim that he suffered ineffective assistance of counsel is governed by the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, the petitioner must first demonstrate that his attorney's performance was deficient and then show that this deficiency prejudiced the defense. *United States v. Walters*, 904 F.2d 765, 771 (1st Cir.1990); *United States v. Caggiano*, 899 F.2d 99, 101 (1st Cir.1990). When the claim of prejudice is grounded on the failure to litigate competently a Fourth Amendment claim, the petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1985). *See also United States v. Caggiano, supra.*

Lau alleges he received ineffective assistance of counsel because his counsel

did not raise the issue of whether the search by the foreign agents and the United States agents was a joint venture or joint operation, for if the answer is yes, the Fourth Amendment applied and the exclusionary rule required the Court to suppress all evidence obtained through that seizure. Even if petitioner's counsel's performance was deficient, Lau has to still demonstrate that this deficiency prejudiced his defense, and when the prejudice is grounded on the failure to litigate competently a Fourth Amendment claim, Lau must prove that his Fourth Amendment claim is meritorious.

 The Fourth Amendment rights and the exclusionary rule are generally inapplicable to foreign searches and seizures. *United States v. Mitro*, 880 F.2d 1480, 1482 (1st Cir.1989), *citing, United States v. Janis*, 428 U.S. 433, 455 n. 31, 96 S.Ct. 3021, 3032 n. 31, 49 L.Ed.2d 1046 (1976). There are two well-established exceptions to this rule: (1) where foreign police conduct shocks the judicial conscience; and (2) where American agents participated in the foreign search or the foreign officers acted as agents for their American counterparts. *United States v. Hensel*, 699 F.2d 18, 25 (1st Cir.), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983). The second exception is the one that respondent alleges applies to this case.

 The Court must address whether the United States agents' participation in the search was so substantial so as to convert the search into a joint venture between the United States and the foreign officials. *Stonehill v. United States*, 405 F.2d 738, 743 (9th Cir.1968), *cert. denied*, 395 U.S. 960, 89 S.Ct. 2102, 23 L.Ed.2d 747 (1969).

Although this is a close case, a number of significant facts guide the Court to conclude that the activities of the United States officials in connection with the search of Lau's residence in St. Martin were sufficient to constitute a joint venture between the United States and St. Martin. An agent of the Drug Enforcement Administration, ("DEA"), Jerome Harris, flew to St. Martin on August 30, 1985, to further investigate the cocaine seized at the Luis Muñoz Marin Airport on August 9, 1985. He met with Special Agent James Williams, a DEA agent attached to the consulate in Curacao, whose responsibility was to coordinate any request or liaison activities between the DEA's office in San Juan and the Netherlands Antilles Islands. Both met with Mr. Narid, Attorney General for the Netherlands Antilles, to discuss the investigation and what assistance they wanted from the Dutch Police. The agents indicated that they were interested in some flight logs which they had received information were at Lau's residence in St. Martin.[1]

Mr. Narid assigned a detective, Jonas Kloughbert, to assist them in the investigation. Next day the DEA agents met Kloughbert and discussed with him what had been obtained by his department during Lau's arrest. Then, the DEA agents, together with Special Agent Aikens of the U.S. Customs Service, were driven by detectives Kloughbert and Frank Mathews to Beacon Hill, where Lau lived in St. Martin. There they met with Lau's landlord, Mr. Ferrier, who informed them that he put all the papers in Lau's apartment in a plastic trash bag and took them to a dump. However, as they were walking back to the car, Mr. Ferrier remembered that the flight logs were in the apartment (Tr. p. 100). At the request of Detective Kloughbert, all four entered Lau's apartment. The federal agents inspected and revised several of the documents and expressed their interest on the same. All the documents related to the helicopter company, toll records, maps, flight logs and other miscellaneous documents were seized by the detective and taken back to the Police Department. Mr. Williams contacted Mr. Narid and made a request for the documents.

The federal agents informed the Netherlands authorities about the investigation and requested their assistance in their search for the flight logs. *See, e.g., United States v. Hensel*, 699 F.2d at 25. Al-

---

1. Respondent had been expelled from St. Martin on August 14, 1985. He was arrested with a small quantity of cocaine and a weapon, in St. Martin.

though the search was under the jurisdiction and control of the Netherlands detectives, the sole purpose of the search different to the facts in *Stonehill, supra,* was to obtain evidence to be used in the federal investigation or prosecution. The evidence was taken by the detective on behalf of the federal agents. The federal agents actively participated in the search of respondent's residence and selected the evidence to be seized.

█ Having reached the conclusion that the activity of the United States officials in this case amounted to a joint venture, we must now examine whether the illegally obtained evidence should have been excluded, and "the essence of our inquiry is whether exclusion serves the rationale of deterring federal officers from unlawful conduct." *United States v. Peterson,* 812 F.2d 486, 491 (9th Cir.1987). In *Peterson,* the Ninth Circuit Court of Appeals extended the good-faith exception to the exclusionary rule created in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), to reasonable reliance on the representations of foreign officials regarding the interpretation of foreign law. *United States v. Staino,* 690 F.Supp. 406, 410 (E.D.Pa.1988), *aff'd,* 888 F.2d 1383 (3rd Cir.1989). The court in *Peterson* reasoned at 492:

> The good faith exception is grounded in the realization that the exclusionary rule does not function as a deterrent in cases in which the law enforcement officers acted on a reasonable belief that their conduct was legal. It is true, as appellants note, that *Leon* speaks only in terms of good faith reliance on a facially valid search warrant. That is not dispositive, however. We conclude that the reasoning applies as well to reliance on foreign law enforcement officers' representations that there has been compliance with their own law.
>
> \* \* \* \* \* \*
>
> [R]emitting reasonable reliance on representation about foreign law is a rational accommodation to the exigencies of foreign investigations.

A review of the transcript reveals that federal officials sought and received assurance from the Attorney General for the Netherlands Antilles that no search and seizure warrant was necessary to enter a house in St. Martin (Tr. 117). Furthermore, Agent Harris believes he asked detective Kloughbert before entering Lau's residence whether a search warrant was needed and he answered in the negative. Taking into consideration these representations from high-ranking law enforcement authorities in the Netherlands Antilles, the reliance by the federal agents was objectively reasonable and no deterrence is gained by extending the exclusionary rule to these facts. *United States v. Staino. Id.,* at 411.

In conclusion, the evidence was admitted properly because the federal officials reasonably relied on good faith on the representations of Dutch officials as to the requirements of Netherlands Antilles search and seizure law.

WHEREFORE, in view of the above findings and conclusions, the Court ORDERS that this section 2255 petition be and is hereby DISMISSED.

IT IS SO ORDERED.