**UNITED STATES of America, Plaintiff**

v.

**[05] Martires Paulino CASTRO, [08] Esteban Martinez García, [23] Carlos Valdes, Defendants**

**Criminal No. 00–0693(PG).**

United States District Court, D. Puerto Rico.

Nov. 14, 2001.

Miriam R. Ramos–Grateroles, San Juan, for Rafael Reynoso–De–La–Cruz.

Marlene Aponte–Cabrera, San Juan, for Santiago Trinidad–Mejias.

Luz M. Rios–Rosario, San Juan, for Angel Vidal–Troncoso.

Luz M. Rios–Rosario, San Juan, Roberto Roldan–Burgos, Cond. Darlington, Rio Piedras, for Carlos Valdes.

Luis R. Rivera–Rodriguez, Ernesto Hernandez–Milan, Hato Rey, for James Larson–Ferguson.

Luis A. Vazquez–Santiago, Puerto Nuevo, for Angel Luis Ortiz–Sierra.

Rafael F. Castro–Lang, Daniel Morrison, Jorge L. Diaz–Reveron, San Juan, for Martires Paulino–Castro.

Lydia Lizarribar–Buxo, Hato Rey, Mariano Acosta–Grubb, Rio Piedras, for Luis Pena–Caceres.

Juan A. Pedrosa–Trapaga, Carlos A. Vazquez–Alvarez, Federal Public Defender's Office, San Juan, for Daniel Lynch–Romero.

Ignacio Rivera–Cordero, Rivera & Montalvo, San Juan, for Esteban Martinez–Garcia.

Antonio Bauza–Torres, Cond. Le Mans, Hato Rey, for Reynaldo Rivera–Ruiz, Felipe Martinez–Berrios, Elias Hernandez–Hernandez.

Mariano Acosta–Grubb, Rio Piedras, for Heriberto Hernandez–Morales.

Jose R. Aguayo, 569 Tnt Cesar Gonzalez, Hato Rey, Marlene Aponte–Cabrera, San Juan, Joaquin Perez, Miami, FL, for Urcinio Gonzalez–Del–Rio.

Anthony E. Keller–Charneco, Mayaguez, for Pablo Duarte–Acosta.

Edwin L. Bello–Rivera, Edwin L. Bello Law Offices, San Juan, Luis A. Vazquez–Santiago, Puerto Nuevo, for David Pacheco.

Benito Gutierrez–Diaz, Fajardo, for Arsenio Gonzalez–Morales.

Lydia Lizarribar–Buxo, Hato Rey, for Moises Velazquez.

Luis M. Chaves–Ghigliotty, Cabo Rojo, Anita Hill–Adames, San Juan, for Alexander Lao–Garcia.

Julio Morales–Sanchez, Hato Rey, for Gregorio F. Diaz–Fontane.

Juanita Trevino–Monserrate, Villa Caparra Cond., Guaynabo, for Manuel Benitez–Arson.

Carmen D. Colon–Melendez, U.S. Attorney's Office District of P.R., Civil Division, Hato Rey, Timothy S. Vasquez, U.S. Attorney's Office, Criminal Division, U.S. Pretrial Services, U.S. Probation Office, U.S. Marshal Service, San Juan, for U.S. Attorneys.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This matter is before the court on "Motion to Suppress Illegal Wiretaps Conducted in the Dominican Republic" filed by co-defendant Martires Paulino Castro on September 14, 2001. (Docket No. 431.) Co-defendant Carlos Valdés joined the motion to suppress on September 26, 2001. The United States filed a response to the motion on October 5, 2001. (Docket No. 450.)

The salient facts are not in controversy. From February 17 to August 11, 2000, law enforcement officers of the Dominican Republic National Narcotics and Drug Agency (DNCD) conducted wire interceptions in that country on several telephones used by co-defendant Martires Paulino Castro, a citizen of the Dominican Republic and resident alien of the United States. Those numbers are as follows: 246–4583,[1] registered in the name of Cristina Castro, an associate of Martires Paulino Castro; 257–9163,[2] registered in the name of Raúl Antonio Peguero, and used by Martires Paulino Castro; 752–7657,[3] a cellular telephone; 696–8421,[4] registered to Aracelis María García; 246–4176,[5] and 707–5541,[6] registered to Casimira Morales Santana and Jesús Polanco Cordero, respectively, the latter an associate of Martires Paulino Castro; 246–5022,[7] owned by Rent–Card Oriental and/or Auto Lavado Paulino, and 249–4385.[8] All of the telephone numbers were located in the city of San Pedro de Macoris, Domincan Republic, except for the telephone of Aracelis María García, located in Arroyo Río Dulce.

On September 21, 2000, a four-count superceding indictment was returned in this court against the defendant and others for knowingly, willfully, intentionally, and unlawfully conspiring to import into the United States multi-kilogram quantities of cocaine, in violation of 21 U.S.C. § 963.

Co-defendant Paulino Castro argues in his memorandum of law that the wire interceptions were conducted as a joint venture with federal agents, per information gleaned from DEA–6 reports prepared on June 15, 2000 and July 30, 2000. The reports arguably reflect that the wire interceptions were coordinated with the help of the Santo Domingo Office of the United States Department of Justice Drug Enforcement Administration (DEA). The defendant argues that prior to the actual wire interceptions, no judicial authorization was requested nor obtained by the Dominican law enforcement authorities.[9] The defense thus argues that the participation of DEA agents with the Dominican law enforcement officials in obtaining the wire interceptions leads to the conclusion that such evidence must be suppressed under the Fourth Amendment to the United States Constitution. *See United States v.*

---

1. The request to Compañía Dominicana de Teléfonos (CODETEL) is made on February 21, 2000, by Attorney Dulce María Luciano, Assistant to the Magistrate Attorney General of the National District, before the DNCD. (Abogado Ayudante del Magistrado Procurador Fiscal del Distrito Nacional, ante la DNCD.)

2. See note 1. The request is made on February 25, 2000.

3. The request to CODETEL is similarly made on May 19, 2000 by Attorney Franklin Rodríguez Espinal, Assistant to the Magistrate Attorney General of the National District. A similar request is made by Attorney Dulce María Luciano on March 7, 2000.

4. A similar request is made by Attorney Franklin Rodríguez Espinal on April 4, 2000.

5. See note 4.

6. See note 4.

7. A similar request is made by Attorney Franklin Rodríguez Espinal on May 15, 2000.

8. A similar request is made by Attorney Franklin Rodríguez Espinal on June 6, 2000.

9. See Exhibit 3, Defendant's memorandum. A certificate dated August 21, 2001 and issued by the judicial authorities of the Fourth Circuit of the National District reflects that the files located in the Clerk's Office of the court reflects no record of any authorized interception of the above telephone numbers. A similar certificate of the Arraignment Court of San Pedro de Macoris reflects that in the files of that court there is no record of requests to intervene with the telephone numbers of Martires Paulino Castro.

*Barona,* 56 F.3d 1087, 1094 (9th Cir.1995); *United States v. Peterson,* 812 F.2d 486, 490 (9th Cir.1987); *Berlin Democratic Club v. Rumsfeld,* 410 F.Supp. 144, 154 (D.D.C.1976). This is particularly true since they were obtained in violation of Dominican law, which requires prior judicial request and authorization before such wire interceptions can be conducted. To support this argument, the defense cites the Constitution of the Dominican Republic which protects the secrecy of telegraphic, telephonic and cablegraphic conversations unless they are seized or searched through legal proceedings which are substantiated in matters that are conducted before judicial authorities.[10] In particular, the General Law of Telecommunications, Ch. III, art. 5, sanctifies the secrecy and inviolability of telecommunications unless authorized by judicial interception in accordance with the common law and what is established in special laws.[11]

█ The United States replies to such argument by stating that as a general rule, foreign searches conducted by foreign law enforcement officers are not subject to the Fourth Amendment and its exclusionary rule. *See Lau v. United States,* 778 F.Supp. 98, 100 (D.P.R.1991), *aff'd,* 976 F.2d 724 (1st Cir.1992). The exception to this general rule is where the circumstances of the foreign search and seizure are so extreme that they "shock the judicial conscience," and where American law enforcement officials significantly participated in the foreign search, or where the foreign authorities actually conducting the search were essentially acting as agents for their United States counterparts. *Lau v. United States,* 778 F.Supp. at 100 (citing *United States v. Mitro,* 880 F.2d 1480, 1482 (1st Cir.1989) (citing *United States v. Janis,* 428 U.S. 433, 455 n. 31, 96 S.Ct.

3021, 49 L.Ed.2d 1046 (1976))); *United States v. Hensel,* 699 F.2d 18, 25 (1st Cir.), *cert denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983). As the defendant notes, foreign aliens can claim such Fourth Amendment protection when such circumstances are established. *See United States v. Toscanino,* 500 F.2d 267, 280 (2nd Cir.1974). The United States also responds that the wire interceptions that were conducted on the telephones used by the defendant were conducted in accordance with the domestic law of the Dominican Republic. They note that the authorities which authorized the interceptions are officials from the Office of the Prosecution for the National District. (Procuraduría Fiscal del Distrito Nacional.)

### JOINT VENTURE

█ A threshold issue in determining the validity of a claim of a Fourth Amendment violation is whether a joint venture existed between the DEA and the DNCD. *See* Note, The Extraterritorial Applicability of the Fourth Amendment, 102 Harv. L.Rev. 1672, 1683 (1989). This is readily apparent since if the court is considering evidence gathered on foreign soil exclusively through the efforts of foreign officials, then no viable Fourth Amendment issue is presented. If however, there was substantial assistance of United States law enforcement personnel so that the foreign wire intercepts were the product of a joint venture, then the protection of the Fourth Amendment may be triggered.

The evidence in the form of a DEA–6 report prepared on June 15, 2000 which relate to the wire interceptions shows that on May 31, 2000, and as the result of an informant's conversation with Luis Pena Cáceres, a member of Martires Paulino

---

10. See Exhibit 4, defendant's memorandum.

11. See Exhibit 5, defendant's memorandum.

Castro's drug organization, the HIDTA[12] Fajardo Office initiated a court authorized Title III wire interception of communications over cellular telephone number 787–397–1477 in Puerto Rico. Telephonic intercepts from this phone, numerous DEA Santo Domingo Country Office (SDCO) coordinated telephonic intercepts by the DNCD in the Dominican Republic, and information from a confidential source indicated that Pena Cáceres would be importing a large quantity of drugs into the Las Ochentas area of Humacao, Puerto Rico, for Paulino Castro. On June 7, 2000, and based upon the wire intercepts, surveillance was established and on June 8, 2000, at 3:24 a.m., federal law enforcement agents moved into the beach area of Las Ochentas after seeing a suspicious vessel as well as several individuals on the beach. They seized ten bales of cocaine weighing 368.2 gross kilos. In another DEA–6 report dated July 30, 2000, it is noted that on July 27, 2000, at about 12:40 p.m., the DEA Santo Domingo Country Office contacted HIDTA Fajardo concerning the ongoing telephonic intercepts of Martires Paulino Castro in the Dominican Republic. "Exact details of the intercepts will be reported by the SDCO." The report continues that according to the information provided, the SDCO had obtained direct evidence in the form of telephonic intercepts that the aforementioned seizure was directly linked to Paulino Castro and consequently to the Pena Cáceres organization.

The concept of joint venture triggers a scenario more portentous than the ethereal relationship described in the reports. The reports reflect at most the passing of information to and from the DEA in the Dominican Republic, a far cry from the operation of a joint venture. The DNCD traditionally cooperates closely with authorities of the United States government on drug investigations. *See* International Narcotics Control Strategy Report, 1999, released by the Bureau for International Narcotics and Law Enforcement Affairs, United States Department of State, Washington, D.C., March 2000. Nevertheless, even if the United States asked the Dominican Republic authorities to intercept calls made to Paulino Castro's telephone, the wiretaps were nevertheless conducted by DNCD and not by DEA personnel. There is no indicium of any control, direction or supervision of the numerous foreign wire interceptions on the part of the DEA in the Dominican Republic. *Cf. United States v. Maturo*, 982 F.2d 57, 60–62 (2nd Cir.1992); *United States v. Maher*, 645 F.2d 780, 782–83 (9th Cir.1981).

## SHOCKS THE CONSCIENCE

■ The "shocks the conscience" prong of the two-prong test is clearly not met and requires no discussion, unless it is shocking for law enforcement officers of two countries to exchange information in the investigation of major drug trafficking organizations. The extraterritorial application of the Fourth Amendment to protect a resident alien with some ties to this country cannot be hobbled by an obtuse reading of the Constitution. *Cf. United States v. Bin Laden*, 126 F.Supp.2d 264, 270–71 (S.D.N.Y.2000). At very least, any scenario proffered by the defense cannot shock the conscience. *See United States v. Rosenthal*, 793 F.2d 1214, 1230–31 (11th Cir.1986); *United States v. Sorren*, 605 F.2d 1211, 1215 (1st Cir.1979); *United States v. Tirinkian*, 502 F.Supp. 620, 627 (D.N.D.1980). *Cf. United States v. Toscanino*, 500 F.2d at 279–81.

## DOMESTIC LEGALITY OF WIRE INTERCEPTIONS

■ The positions of the parties are clearly at loggerheads as to whether the

12. High–Intensity Drug Trafficking Area.

interceptions at issue were legally obtained under the domestic law of the Dominican Republic. While at first blush there is no clear answer to this question, the answer is nevertheless that the interceptions were the product of judicial authorization in accordance with the requirements of domestic law in effect at the time of such wire interceptions were conducted. The clearest operational indicium of this legality is an interlocutory order signed by an arraignment judge in the Dominican Republic, dated May 26, 2000, which relies in part on 25 cassettes of wiretapping and electronic tracing made of cellular number on a number of wire interceptions conducted under similar circumstances as those in this case.[13] It is clear that such evidence is admissible in this court when foreign law was followed to obtain the same, and the subject is a United States resident alien. *See United States v. Maturo,* 982 F.2d at 60; *Stowe v. Devoy,* 588 F.2d 336, 341 (2nd Cir.1978), *cert. denied,* 442 U.S. 931, 99 S.Ct. 2862, 61 L.Ed.2d 299 (1979); *cf. United States v. Verdugo–Urquidez,* 494 U.S. 259, 265–70, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990); *United States v. Stonehill,* 420 F.Supp. 46, 53–54 (1976), *aff'd in part, reversed in part,* 702 F.2d 1288 (9th Cir.1983), *cert. denied,* 465 U.S. 1079, 104 S.Ct. 1440, 79 L.Ed.2d 761 (1984).

Chapter III, Article 5, of the General Law of Telecommunications No. 153–98, requires judicial authorization to allow for the interception of wire communications in the Dominican Republic. The implementing regulation dated November 5, 1999 to put into effect the requirements of the General Law of Telecommunications clearly notes at Article One that no telephonic interception may be realized without prior judicial authorization or that of the prosecutor (fiscal). The same article notes that either assistant prosecutors (ayudantes fiscales) or arraignment judges[14] (jueces de instrucción) may be in charge of investigations which involve intercepting communications. These investigations are to be under the authority and control of the prosecutor (fiscal) or arraignment judge. Article Two of the same regulation notes that the intercepts may only be conducted under an order written by the assistant prosecutors and such order must contain the name of the person(s) whose communications are to be intercepted. Article Four specifies that the intercepts may be conducted by members of the judicial police (policía judicial) which have been specifically determined by the Procuraduría Fiscal[15] of the National District or by the Judge of Instruction.

Clearly, the wire intercepts were legal at the time they were undertaken in the Dominican Republic even if under similar circumstances, they would not be legal if undertaken in this country. *See, e.g., United States v. Maturo,* 982 F.2d at 60; *United States v. Benedict,* 647 F.2d 928, 930 (9th Cir.1981); *Stowe v. Devoy,* 588 F.2d at 340. The Resolution (Resolución No. 36–00) passed by the Instituto Dominicano de las Telecomunicaciones (INDOTEL) reflects that the state of the law has dramatically changed in the Dominican Republic since the end of 2000. The resolution, dated December 19, 2000, requires that wire interceptions be authorized only by a judge of the judicial authority (Juez del

---

**13.** Plaintiff's Memorandum of Law, Exhibit 2.

**14.** "Juez de Instrucción" is a lower court judge who has jurisdiction over initial criminal matters and is in charge of preliminary stages of criminal proceedings.

**15.** Procuraduría Fiscal is the office of the prosecution.

Poder Judicial).[16] Thus the judicially accepted practice of prosecutors' requesting that the telephone company intercept telephone calls has been discontinued. Nevertheless, the wire interceptions conducted by the Dominican authorities during the year 2000 relating to Martires Paulino Castro were in keeping with the requirements of the Constitution of the Dominican Republic as well as the General Law of Telecommunications in effect and none of the interceptions extended beyond December 19, 2000. Therefore, the defendant's motion to suppress lacks merit.

In view of the above, the motion to suppress illegal wiretaps must be and is hereby DENIED.

---

**16.** See Exhibit 6, defendant's memorandum.