**UNITED STATES of America,**
**Plaintiff,**

v.

**[1] Luc NORMANDIN, [2] Carl Normandin, [3] Kelly Rodrique, [4] Nancy Dumont, Defendants.**

**No. CRIM. 04–305(PG).**

United States District Court,
D. Puerto Rico.

July 14, 2005.

5

Alvin E. Entin, Fort Lauderdale, Fl,
Luis R. Lugo–Emanuelli, Lugo Emanuelli

**6**

Law Office, Fajardo, Maria T. Arsuaga, Federal Public Defender's Office, Hato Rey, for Luc Normandin (1), Defendant.

Lydia Lizarribar–Buxo, Lizarribar Masini Law Office, San Juan, for Carl Normandin (2), Defendant.

Juan G. Nieves–Cassas, Nieves Cassas, De Luna & Feria Cestero, San Juan, for Kelly Rodrique (3), Defendant.

Miriam R. Ramos–Grateroles, Miriam Ramos Grateroles, San Juan, for Nancy Dumont (4), Defendant.

Judith Vargas, United States Attorney's Office, San Juan, for USA, Plaintiff.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court is defendant Luc Normandin's motion to dismiss on account of the alleged lack of jurisdiction over the Canadian sailing vessel LA GABRIELA, its crew and its cargo (Docket No. 50, Ex. 1), which motion co-defendant Carl Normandin has joined. (Docket No. 53) Also pending is the government's amended motion requesting a determination of jurisdiction, where the government likewise informs of its compliance with document production. (Docket No. 51) In addition, the same co-defendants request production of all documents pertaining to the Canadian wiretap leading to their arrests, as well as all documents showing contact between the United States and Canada involving this matter. (Docket Nos. 55 and 56)

## I.  BACKGROUND

On or about August 10, 2004, the U.S. Coast Guard intercepted in international waters the S/V LA GABRIELA, a Canadian vessel carrying about 750 kilograms of cocaine. Per the Certification submitted by the government, Canada had contacted the Coast Guard authorizing the intercep-

tion, and later executed a corresponding waiver of jurisdiction.

The Coast Guard detained four individuals aboard the vessel, who were later identified as Luc Normandin, Carl Normandin, Kelly Rodrique, and Nancy Dumont, the defendants in this case. They were charged on August 18, 2004 with conspiracy and possession with the intent to distribute the cocaine while on board a vessel subject to the jurisdiction of the United States, in violation, inter alia, of 46 U.S.C.App. § 1903(a). (Docket No. 14)

On September 15, 2004, defendant Nancy Dumont filed a motion requesting that the government be ordered to disclose "the date, hour and name of the person(s) from the government of Canada who authorized the boarding of the S/V GABRIELA..." claiming the information was necessary to determine whether a motion to suppress should be filed. (Docket No. 21) In anticipation of an order, the government responded by filing a copy of the Certification issued by the U.S. Department of State, which certifies that Canada authorized the United States to locate, stop, board, and search the vessel, and further certifies that upon communication of the search results, Canada waived objection to the enforcement of U.S. law over the vessel, its cargo, and the persons on board. (Docket No. 22)

Defendant Dumont later renewed her motion claiming that she had requested the date, hour and name of the person(s) from the government of Canada who authorized the boarding, and that the Certificate did not provide that information. (Docket No. 23) The other co-defendants filed a joint motion to compel discovery requesting further information regarding the waiver, including nautical charts and log books (Docket No. 42), which motion was granted by the Court. (Docket No. 43)

In addition, defendant Luc Normandin filed an amended motion to dismiss for lack of jurisdiction, arguing that the government must evidence Canada's waiver of jurisdiction by spelling out precisely how it was obtained, citing in support *U.S. v. Leuro-Rosas*, 952 F.2d 616, 622 (1st Cir. 1991), *cert. denied Leuro Rosas v. U.S.*, 503 U.S. 975, 112 S.Ct. 1598, 118 L.Ed.2d 313 (1992). (Docket No. 50, Ex. 1)[1] Even if Canada had waived its jurisdiction, defendant further maintains that because defendants are all Canadian citizens on board a Canadian vessel in international waters on their way to Canada, there are insufficient contacts with the United States, and this lack of nexus divests the United States of jurisdiction. Defendant Carl Normandin joined the motion. (Docket No. 53)[2]

The government complied with the document production and filed an amended motion requesting an expeditious determination of jurisdiction.[3] (Docket No. 51) The government argues that the provided Certification is conclusive proof of Canada's consent to U.S. jurisdiction. It recognizes, however, that other Circuits have determined that a defendant must be permitted to rebut the Certification so as not to run afoul of the Confrontation Clause, and has accordingly provided the names of the Canadian officials who consented to U.S. jurisdiction and the timing of the consent. The government maintains that the remainder of defendants' document requests are undiscoverable. It has not addressed defendants' nexus argument.

Defendants Luc Normandin and Carl Normandin have also requested production of all documents pertaining to the Canadian wiretap leading to their arrests, as well as all documents showing contact between the United States and Canada involving this matter. (Docket Nos. 55 and 56) The government has not responded.

## II. DISCUSSION

The Maritime Drug Law Enforcement Act ("MDLEA") makes it "unlawful for any person ... on board a vessel subject to the jurisdiction of the United States ... to possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C.App. § 1903(a); *U.S. v. Cardales*, 168 F.3d 548, 552 (1st Cir.1999). "Jurisdiction of the United States with respect to vessels subject to this chapter is not an element of any offense. All jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C.App. § 1903(f); *U.S. v. Gonzalez*, 311 F.3d 440, 445 (1st Cir.2002); *Cardales*, 168 F.3d at 554 n. 3.

1. The amended motion was technically a motion for leave to file with a draft motion to dismiss attached as an exhibit. (Docket No. 50 Ex. 1) Leave was requested because counsel's application for admission pro hac vice was pending approval at the time. Counsel had earlier filed two other requests for leave, also appending draft motions to dismiss. (Docket Nos. 46 and 49) In sum, counsel tendered a total of three different draft motions to dismiss before the Court granted leave to file. (Docket No. 54) To date, counsel has not refiled, and has not specified which, if any, is the final motion to dismiss. Given, however, that the last motion filed was entitled "amended motion," the Court finds the former two (Docket Nos. 46 and 49) MOOT and considers only the amended motion to dismiss, identified as Exhibit 1 to Docket No. 50.

2. Defendant Carl Normandin failed to specify which motion he was joining, but the Court also assumes it was the amended motion (Docket No. 50, Ex.1).

3. In light of its amended motion for a determination of jurisdiction and notifying compliance with document production (Docket No. 51), the government's previous motions in compliance with document production (Docket Nos. 47 and 48) are MOOT.

The MDLEA provides that "a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States" is a vessel subject to the jurisdiction of the United States. 46 U.S.C.App. § 1903(c)(1)(C). Such consent or waiver of objection may be obtained by radio, telephone, or similar oral or electronic means, and is conclusively proved by certification of the Secretary of State or the Secretary's designee. 46 U.S.C.App. § 1903(c)(1).

■ The MDLEA's consent basis for jurisdiction is grounded in considerations of international comity and diplomatic courtesy, and is not intended as a protection for defendants. *U.S. v. Greer*, 285 F.3d 158, 175 (2d Cir.2002) (citing S.Rep. No. 99–530, at 16 (1986), reprinted in 1986 U.S.C.C.A.N. 5986, 6001) (collecting cases); *see also United States v. Rasheed*, 802 F.Supp. 312, 321 (D.Haw.1992) ("[T]he consent requirement of § 1903 is a courtesy extended to foreign governments, not to drug smugglers.").

As such, defendants only have standing to argue non-compliance with the MDLEA; they have no standing to assert violations of international law on behalf of Canada. *See United States v. Maynard*, 888 F.2d 918, 927 (1st Cir.1989); *U.S. v. Acosta Valdez*, 84 F.Supp.2d 237, 239 (D.P.R.1999); *accord U.S. v. Bustos–Useche*, 273 F.3d 622, 627 (5th Cir.2001). The Court will therefore ignore the underlying allusions in defendants' arguments to purported violations of international law.

■ The Court notes, however, that application of the MDLEA to defendants is consistent with the protective principle of international law because Congress has determined that all drug trafficking aboard vessels threatens our nation's security. *Cardales*, 168 F.3d at 553. Furthermore, "inasmuch as trafficking of narcotics is universally condemned by law-abiding nations, we see no reason to conclude that it is 'fundamentally unfair' for Congress to provide for the punishment of persons apprehended with narcotics on the high seas." *Id.* (citation omitted).

■ Defendants otherwise submit that the Certification filed by the government is defective because it only states that Canada consented, failing to specify how consent was given. They argue that "[a] certification should spell out the circumstances in which the consent, waiver, or denial was obtained, including the name and title of the foreign official acting on behalf of his government, the precise time of the communication, and the means by which the communication was conveyed," as set forth in *U.S. v. Leuro–Rosas*, 952 F.2d 616, 619–20 (1st Cir.1991)(citing S.Rep. No. 99–530, 99th Cong., 2d Sess. 15 (1986)). Defendants themselves point out, however, that the operative word is "should." *See* Docket No. 50 at Ex. 1 at 7. While clearly the better practice would be to include this information in the Certification, any such omission is not necessarily decisive. *See Leuro–Rosas*, 952 F.2d at 621. Here, the Certification filed by the government unequivocally states that Canada consented to U.S. jurisdiction, and for purposes of the MDLEA, that is enough. 46 U.S.C.App. § 1903(c)(1)

Furthermore, while the Certification is conclusive under the MDLEA, the statute does not make it the exclusive means of proving the foreign nation's consent. *See id.* As the government noted, prior to the MDLEA amendment removing jurisdiction as an element, other Circuits allowed defendants to contest certifications based on Confrontation Clause considerations. *See e.g. U.S. v. Aikins*, 946 F.2d 608, 614 (9th Cir.1990). On its own motion, the government accordingly provided information as

to how the consent was obtained, producing the names of the authorizing officials and the timing of the consent. Docket No. 51. The Court notes that defendants have yet to suggest that Canada did not consent. It appears that the only missing element enumerated in *Leuro–Rosas,* 952 F.2d at 619–20 is the means of the communication, and while the government should have specified it, the failure to do so is not fatal. *See Leuro–Rosas,* 952 F.2d at 621. In sum, this Court finds that the government satisfied the MDLEA's consent requirement and that Canada consented to U.S. jurisdiction over the S/V LA GABRIELA, its crew and its cargo.

■ The Court's inquiry is not finished, however, because defendants argue that even if jurisdiction was obtained, lack of nexus divested the United States thereof. To hold as much however, defendants would require this Court to disregard explicit First Circuit authority to the contrary. *See Cardales,* 168 F.3d at 552–53 (determining that there is no nexus requirement under the MDLEA); *accord U.S. v. Martinez–Hidalgo,* 993 F.2d 1052 (3d Cir.1993); *U.S. v. Suerte,* 291 F.3d 366, 372 (5th Cir.2002); *but cf. U.S. v. Klimavicius–Viloria,* 144 F.3d 1249, 1257 (9th Cir. 1998) (requiring government to prove that offense conduct is likely to have effects in United States). In light of controlling First Circuit authority, defendants' nexus argument does not hold water.[4]

There remain defendants' motions for further discovery regarding a Canadian wiretap. (Docket Nos. 55 and 56) Defendants have indicated that they may file a motion to suppress because the wiretap may have been conducted in violation of Canadian law, and they have requested any and all documents relating to the interception of their conversations, as well as all documents showing contact between the U.S. and Canada involving this matter.

■ "It is well established ... that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act." *United States v. Janis,* 428 U.S. 433, 455 n. 31, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (citation omitted); *U.S. v. Mitro,* 880 F.2d 1480, 1482 (1st Cir.1989) (noting the very narrow exceptions where foreign police conduct shocks the judicial conscience, and where U.S. agents either instigated or participated in the foreign search); *U.S. v. Castro,* 175 F.Supp.2d 129, 133 (D.P.R.2001).

■ Nevertheless, it is clear that most if not all of the proof defendants need to support the motion for suppression would be in the hands of the Canadian government, and this Court lacks the authority to compel a sovereign nation to make such disclosures. To the extent, however, that any such information is in the possession of the government, defendants' motions for production are **GRANTED**, and the government is hereby ordered to disclose the same to defendants. Should the government have no such information, it shall submit an affidavit to that effect.

### *III. CONCLUSION*

In sum, this Court has determined that Canada surrendered jurisdiction to the United States over the S/V LA GABRIELA, its crew and its cargo. Having made

---

4. Even if by some realignment of the stars nexus were required in a First Circuit MDLEA prosecution, this Court finds that there is more than sufficient nexus. The United States is the world's most heavily trafficked market, and the narcotics trade being the global concern it is, any attempt to show that the 750 kilograms of cocaine found in defendants' possession would have no effect on supply and demand in the United States is risible.

**10**

this threshold determination as required by the MDLEA, 46 U.S.C.App. § 1903(f), the Court will entertain no further motions on the matter. The government's amended motion for a determination (Docket No. 51), is hereby accordingly **GRANTED**, its document production (Docket No. 51) is **NOTED**, and defendants' motions to dismiss for lack of jurisdiction (Docket Nos. 50 Ex.1 and 53) are **DENIED**. Defendants' motions for discovery regarding the Canadian wiretap (Docket Nos. 55 and 56), are **GRANTED** to the extent that such discovery is sought from the United States. In the event that the United States possesses no such information, it shall file an affidavit stating as much.

**IT IS SO ORDERED.**